Matter of Farideh P. v Ahmed Q. (2022 NY Slip Op 01211)





Matter of Farideh P. v Ahmed Q.


2022 NY Slip Op 01211


Decided on February 24, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 24, 2022

530987
[*1]In the Matter of Farideh P., Respondent,
v
Ahmed Q., Appellant.

Calendar Date:January 5, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Tully Rinckey, PLLC, Syracuse (Maria V. Morse of counsel), for appellant.
Legal Aid Society of Northeastern New York, Amsterdam (Veronica C. Fallarino of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of St. Lawrence County (Morris, J.), entered January 29, 2020, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, finding respondent to have committed family offenses, and issued an order of protection.
Petitioner and respondent were involved in a relationship and cohabitated from July 2018 until August 23, 2018 when petitioner moved out. Based upon incidents that allegedly occurred on that day, petitioner commenced this family offense proceeding in February 2019. Family Court issued petitioner a temporary order of protection on February 6, 2019. In June 2019, respondent filed a family offense cross petition and received a temporary order of protection. These same incidents led to a July 2019 eight-count indictment of respondent. In August 2019, petitioner moved to dismiss the cross petition and to vacate the temporary order of protection. Family Court partially granted the motion to dismiss but declined to vacate the temporary order of protection. On two occasions, respondent moved to adjourn the Family Court proceedings pending the conclusion of his criminal trial. Family Court denied both motions. At the close of the fact-finding hearing, respondent withdrew his cross petition, with prejudice. Thereafter, Family Court determined that respondent committed the family offenses of harassment in the second degree, criminal mischief in the fourth degree and menacing in the third degree and issued a one-year order of protection. Respondent appeals.
Respondent initially contends that Family Court abused its discretion when it denied his motions to adjourn the family offense proceeding until after the disposition of the criminal charges pending against him. "The grant or denial of a motion for an adjournment for any purpose is a matter resting within the sound discretion of the trial court" (Matter of Steven B., 6 NY3d 888, 889 [2006] [internal quotation marks and citation omitted]). Although it may have been a better practice to adjourn the family offense proceeding until the criminal action was resolved, we are unpersuaded that Family Court abused its discretion in denying respondent's motions for an adjournment (see Matter of Majesty M. [Brandy P.], 166 AD3d 775, 776 [2018]; Matter of Angel P. [Jose C.], 155 AD3d 569, 571 [2017], lvs denied 30 NY3d 911 [2018]); Matter of Emily I., 50 AD3d 1181, 1181 [2008], lv denied 10 NY3d 712 [2008]).
Respondent next contends that petitioner failed to establish by a preponderance of the evidence that he committed a family offense. "Petitioner, as the party seeking an order of protection, bears the burden of proving by a fair preponderance of the evidence that respondent committed a family offense" (Matter of Bedford v Seeley, 176 AD3d 1338, 1339 [2019] [citations omitted]). "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility [*2]of witnesses are entitled to great weight" (Matter of Dawn DD. v James EE., 140 AD3d 1225, 1226 [2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 903 [2016]).
As relevant here, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same" (Penal Law § 240.26 [1]). "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: . . . [w]ith intent to prevent a person from communicating a request for emergency assistance, intentionally disables or removes telephonic . . . equipment while that person: (a) is attempting to seek or is engaged in the process of seeking emergency assistance from police [or] law enforcement . . .; or (b) is attempting to seek or is engaged in the process of seeking emergency assistance from another person or entity in order to protect himself, herself or a third person from imminent physical injury" (Penal Law § 145.00 [4]). "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury" (Penal Law § 120.15). "The requisite intent . . . may be inferred from the conduct itself or the surrounding circumstances" (Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130 [2015] [citations omitted]).
Petitioner testified that she was attending Clarkson University and was involved in a relationship and cohabitated with respondent in a camper from July 2018 until August 23, 2018. On that morning, as she was showering, respondent began shouting at petitioner. When she picked up her phone and threatened to call the police, he grabbed her wrist, forcibly took her phone and then took her picture while she was unclothed. He proceeded to close the windows and curtains in the camper, lock the door, and tell petitioner, "your a** is mine, you're not going to leave here until I tell you." Petitioner was unable to leave the camper for several hours, but eventually convinced respondent to take her to her doctor's appointment. Respondent warned her not to mention anything to anyone and, before they left the camper, he used perfume to clean under petitioner's fingernails to "wipe evidence off." He refused to return her phone. She did not disclose anything to anyone at the doctor's office and left the appointment with respondent. Thereafter, she was able to convince respondent to take her to Clarkson University, where she exited his vehicle and was told by respondent that he would pick her up in 30 minutes. Petitioner testified that respondent still had her phone and she was unable to contact her friends. When respondent returned, she was afraid and [*3]felt that she had to leave the campus with him. After driving for some time, respondent pulled the vehicle over and searched petitioner for recording devices. Respondent told petitioner that "he's smart and he never get[s] caught" and stated that he would destroy her life if she did anything. At that point, petitioner opened the door and began running, but respondent caught her and forced her back into the car. Once back in the vehicle, respondent began driving erratically, running through two red lights. Petitioner eventually escaped by opening the car door, jumping out and running to a nearby church, where a couple drove her to Clarkson University.
A safety and security officer at Clarkson University testified at the hearing that petitioner described the incidents to him and showed him her wrist. The officer testified that he could see red marks and took photographs, which were admitted into evidence. Finally, a sheriff's deputy testified to his role in the investigation into the charges, specifically recalling that he accompanied petitioner back to the camper on August 24, 2018 to retrieve her belongings and discovering her cell phone under the mattress. Respondent did not call any witnesses. We find that the record supports Family Court's finding that petitioner proved, by a preponderance of the evidence, that respondent committed the family offenses of harassment in the second degree, criminal mischief in the fourth degree and menacing in the third degree (see Matter of Bedford v Seeley, 176 AD3d at 1339; Matter of Jasmin NN. v Jasmin C., 167 AD3d 1274, 1276 [2018]; Matter of Dawn DD. v James EE., 140 AD3d at 1227).
Respondent also asserts that his counsel was ineffective for failing to call any witnesses or present any evidence and in withdrawing his cross petition with prejudice. "[T]o successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of reasonably competent and, thus, meaningful representation" (Matter of Putnam v Jenney, 168 AD3d 1155, 1157 [2019] [internal quotation marks, brackets and citation omitted]). Counsel made cogent opening and closing statements, adequately cross-examined witnesses, made appropriate objections and engaged in motion practice. "The decision of respondent's counsel not to present evidence at the hearing was reasonable in light of the pending criminal trial" (Matter of Hailey JJ. [Garfield KK.], 84 AD3d 1432, 1432 [2011] [citations omitted]; see Matter of Brooke OO. [Lawrence OO.], 74 AD3d 1429, 1431 [2010], lv denied 15 NY3d 706 [2010]). Our review of the record reveals that respondent received meaningful representation and thus his ineffective assistance of counsel argument is unpersuasive (see Matter of Shay-Nah FF. [Theresa GG.], 106 AD3d 1398, 1402 [2013], lv denied 21 NY3d 863 [2013]; Matter of Fay GG. [John GG.], 97 AD3d 918, 921 [2012]).
Egan Jr., J.P., Lynch and Pritzker, JJ., concur.
ORDERED that the order is affirmed[*4], without costs.