Matter of Boltz v Geraci (2024 NY Slip Op 04500)

Matter of Boltz v Geraci

2024 NY Slip Op 04500

Decided on September 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 19, 2024

CV-23-1633
[*1]In the Matter of Heather Boltz, Appellant,
v
Christopher Geraci, Respondent.

Calendar Date:August 15, 2024

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Barbara Ann Montena, Saratoga Springs, for appellant.

Egan Jr., J.
Appeal from an order of the Family Court of Saratoga County (Paul Pelagalli, J.), entered July 20, 2023, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 8, for an order of protection.
The parties divorced in 2004 and are the parents of two adult children. In the years since their separation, petitioner remarried and continued to live in New York, while respondent moved to Florida. Respondent spoke to petitioner's husband by telephone in March 2022, during which conversation respondent allegedly told petitioner's current husband that he needed to "keep [petitioner] in line" or that there would be "serious consequences." Petitioner commenced this family offense proceeding in April 2022, alleging that respondent had subjected her to various forms of physical and mental abuse over the years and that his comment during the telephone call placed her in fear of imminent harm. Petitioner thereafter specified at the fact-finding hearing that her argument was that respondent's comments during the phone call, when viewed in conjunction with his prior behaviors, constituted either harassment in the first degree or harassment in the second degree. After the conclusion of that hearing, Family Court issued an order in which it determined that petitioner had failed to prove the commission of either offense and dismissed the petition. Petitioner appeals.
We affirm. The petitioner in a family offense proceeding bears the burden of establishing, by a fair preponderance of the evidence, that the respondent committed one or more of the family offenses specified in Family Ct Act § 821 (1) (a) (see Family Ct Act § 832; Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d 1293, 1294 [3d Dept 2023]). Here, petitioner endeavored to prove that respondent had committed the family offense of harassment in the first degree (see Penal Law § 240.25) or, alternatively, harassment in the second degree (see Penal Law § 240.26 [3]). "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d at 1294-1295 [internal quotation marks and citations omitted]; see Matter of Carly W. v Mark V., 225 AD3d 984, 985 [3d Dept 2024]).
Harassment in the first degree requires, in relevant part, proof that a person "intentionally and repeatedly harasses another person by . . . engaging in a course of conduct or by repeatedly committing acts which places such person in reasonable fear of physical injury" (Penal Law § 240.25; see Matter of Allen v Emery, 187 AD3d 1339, 1340 [3d Dept 2020]). Harassment in the second degree, in turn, occurs when a person, "with intent to harass, annoy or alarm another person[,] . . . threatens to strike or otherwise subjects another person to physical contact, follows a person in or about a public place or places or 'engages in a course of conduct [*2]or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate
purpose' " (Matter of Allen v Emery, 187 AD3d at 1340, quoting Penal Law § 240.26; see Matter of Pauline DD. v Dawn DD., 212 AD3d 1039, 1041 [3d Dept 2023], lv denied 39 NY3d 915 [2023]). In the context of a family offense petition, the fact that some of the alleged conduct occurred years earlier is not dispositive, as "the issue is the imminence of the danger and not the age of the threat" (Matter of Pamela N. v Neil N., 93 AD3d 1107, 1109 n [3d Dept 2012] [internal quotation marks and citations omitted]; see Family Ct Act § 812 [1]; Matter of Tammy TT. v Charles TT., 204 AD3d 1336, 1339 [3d Dept 2022]; Matter of Melissa H. v Shameer S., 145 AD3d 472, 473 [1st Dept 2016], lv denied 28 NY3d 915 [2017]). Nevertheless, the frequency and age of the alleged conduct remains relevant in assessing whether there is "a pattern of imminent and ongoing danger to the" petitioner that would warrant relief (Matter of Latava P. v Charles W., 171 AD3d 525, 525 [1st Dept 2019]; see Matter of Opray v Fitzharris, 84 AD3d 1092, 1093 [2d Dept 2011]).
Turning to the hearing evidence with that framework in mind, petitioner's husband testified and described a March 2022 telephone call in which respondent complained to him about petitioner contacting respondent's place of employment, warning that he had "better keep [petitioner] in line or else there will be serious consequences." Petitioner herself testified as to how learning of that conversation, particularly after she was served with respondent's application for an order of protection against her in April 2022, made her afraid because of respondent's prior abusive and harassing conduct. Petitioner described, in particular, how respondent had subjected her to various forms of physical and mental abuse prior to their 2004 divorce and how he had threatened to crush her skull during a 2014 telephone call.[FN1] Petitioner acknowledged, however, that she had not seen respondent, and did not believe that she had spoken to him on the telephone, since 2014.
Respondent also testified, confirming petitioner's testimony that he had not been convicted of any crimes as the result of her allegations and that he had not seen her in person or talked to her since 2014. He denied her claim that he had threatened her during a 2014 telephone call. Respondent further described how the March 2022 telephone conversation with petitioner's husband and his application for an order of protection against petitioner the next month were not connected to each other and did not involve threats of violence. Respondent testified that he spoke to petitioner's husband after one of the parties' adult children — who was in Florida at the time and had called petitioner's husband while in the car with respondent — became upset while talking to petitioner's husband about a family housing dispute. Respondent took the phone and himself became upset during the [*3]ensuing conversation about that dispute, and promised "consequences," but stated that he meant legal action as opposed to any improper threat. As for respondent's subsequent application for an order of protection against petitioner, he explained that he sought the order after he learned that petitioner had requested copies of his employment records and wanted to stop petitioner from harassing him by "coming after [his] employment or" otherwise contacting him.[FN2] Respondent also stated in no uncertain terms that he was not a frequent visitor to New York and that, despite the fact that his daughter and grandchildren still lived in New York, he would not "ever" be going there in the future to bother petitioner or for any other reason.
Family Court credited respondent's account of limited interactions between him and petitioner and a March 2022 telephone call in which he did not intend to threaten petitioner with violence or otherwise do anything improper. In contrast, Family Court only found some portions of petitioner's account to be credible and noted that her allegations of respondent's conduct up to 2014 were uncorroborated. Family Court went on to determine that petitioner had not proven an ongoing pattern of harassing behavior that would constitute harassment in the first or second degrees. In so doing, Family Court accurately observed that the prior conduct alleged by petitioner was scattered over decades and had ceased by 2014, after which time the parties had minimal or no contact, and concluded that she had simply failed to "establish a cognizable pattern of behavior on the part of [respondent] sufficient to make the more remote allegations relevant" to the 2022 telephone call or otherwise suggest that she faced an immediate and ongoing threat from respondent that would warrant relief (Matter of Opray v Fitzharris, 84 AD3d at 1093). According deference to Family Court's assessments of credibility, we find ample support in the record for that determination (see Matter of David ZZ. v Michael ZZ., 151 AD3d 1339, 1341 [3d Dept 2017]; see also Matter of Latava P. v Charles W., 171 AD3d at 525).
Petitioner lastly complains that she was deprived of effective counsel. "[T]o successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Carly W. v Mark V., 225 AD3d at 987 [internal quotation marks and citations omitted]; see Matter of Farideh P. v Ahmed Q., 202 AD3d 1391, 1394 [3d Dept 2022], lv denied 38 NY3d 909 [2022], cert denied ___ US ___, 143 S Ct 606 [2023]). Petitioner points to trial counsel's failure to amend her initial pro se petition to ensure that all of her allegations of abusive conduct by respondent during their marriage were raised and could be referenced in her testimony, as well as counsel's failure to present medical proof of her injuries that might corroborate those claims. Petitioner [*4]overlooks that the major challenge with her case was not the failure to extensively document behavior that had occurred decades before the filing of her petition, but rather the extraordinarily difficult task of tying that conduct to the March 2022 telephone call and suggest that it was part of an ongoing pattern of harassment. Trial counsel therefore had every reason to focus upon the latter problem, and a review of the record and, in particular, his posthearing memorandum of law reflects that he did so. Trial counsel capably participated in the fact-finding hearing and argued a difficult case to the best of his ability and, "though the representation may not have been flawless, we cannot say it was not reasonably competent" so as to deprive petitioner of meaningful representation (Matter of Putnam v Jenney, 168 AD3d 1155, 1158 [3d Dept 2019]; see Matter of Carly W. v Mark V., 225 AD3d at 987).
Garry, P.J., Clark, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Contrary to petitioner's contention, Family Court properly rebuffed her various efforts to present testimony regarding incidents of abuse and threats by respondent that were not alleged in the petition and, in one case, occurred after the petition had been filed (see Matter of Tikiya S. v Kyle R.G., 224 AD3d 618, 618 [1st Dept 2024]; Matter of Little v Renz, 137 AD3d 916, 916 [2d Dept 2016]; see also Matter of King v King, 167 AD3d 1272, 1274 [3d Dept 2018]).

Footnote 2: Petitioner confirmed in her testimony that she had sought respondent's employment records and that respondent cited that request as the reason for seeking an order of protection against her.